IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 4:66CV37-WAP |
| v. ) | |
| ) | |
| INDIANOLA MUNICIPAL SEPARATE ) | |
| SCHOOL DISTRICT, et al., ) | |
| ) | |
| Defendants. ) | |

**AGREED ORDER OF DISMISSAL**

The United States initiated a review of the Indianola School District ("District"), which included an information request to the District. Based on a review of the information and data provided by the District, the United States advised the District that, in its view, the District has fulfilled its affirmative desegregation obligations under the Fourteenth Amendment and applicable federal law, entitling the District to a declaration of unitary status. As indicated by the signatures of counsel below, the parties respectfully request that the Court approve this Agreed Order of Dismissal, declaring that the District has achieved unitary status and dismissing this case.

**I.  PROCEDURAL HISTORY**

This school desegregation suit was instituted by the United States against the Indianola School District on July 14, 1966. On August 26, 1966, this Court ordered the District to desegregate its public schools and required the District to dismantle the dual school system in the areas of student assignment, faculty hiring and assignment, quality of education, and facilities. The Court approved a desegregation plan on January 20, 1970. On June 11, 1970, this Court

amended the order clarifying the District obligations in the areas student assignment, personnel assignment, and hiring procedures.

Since the 1970-1971 school year, the District has filed detailed annual reports with the Court and served copies on the United States. These reports include the number, by race, of students and faculty at each school and classroom in the system, faculty assignment data, as well as other information about the District, including transportation and facilities.

## II.     LEGAL ANALYSIS

It has long been recognized that the goal of a school desegregation case is to convert promptly a de jure segregated school system to a system without "white" schools or "black" schools, but just schools. Green v. County Sch. Bd. of New Kent County, 391 U.S. 430, 442 (1968). The standard established by the Supreme Court for determining whether a school district has achieved unitary status, thus warranting termination of judicial supervision, is: (1) whether the school district has fully and satisfactorily complied with the court's desegregation orders for a reasonable period of time; (2) whether the school district has eliminated the vestiges of past de jure discrimination to the extent practicable; and (3) whether the school district has demonstrated a good faith commitment to the whole of the court's order and to those provisions of the law and the Constitution which were the predicate for judicial intervention in the first instance. See Missouri v. Jenkins, 515 U.S. 70, 87-89 (1995); Freeman v. Pitts, 503 U. S. 467, 491-92, 498 (1992); Board of Educ. of Oklahoma City Pub. Sch. v. Dowell, 498 U.S. 237, 248-50 (1991).

The Supreme Court has identified six areas, commonly known as the "Green factors," which must be addressed as part of the determination of whether a school district has fulfilled its duties and eliminated vestiges of the prior dual school system to the extent practicable:

(1) student assignment; (2) faculty; (3) staff; (4) transportation; (5) extracurricular activities; and (6) facilities. Green, 391 U.S. at 435. See Dowell, 498 U.S. at 250. The Green factors, however, are not intended to be a "rigid framework;" the Supreme Court has approved consideration of other indicia, such as "quality of education," as important factors in determining whether the District has fulfilled its desegregation obligations. See Freeman, 503 U.S. at 492-93.

Based on the information and data provided by the District, and on all the surrounding facts, as set forth below, the District has complied with the Court's desegregation orders for a reasonable period of time and has eliminated the vestiges of past de jure discrimination to the extent practicable.

### III.  STIPULATED FACTS

**Student Assignment:** Prior to the Court's order to desegregate, the District operated a dual system with Lockard Elementary (grades 1-7) and Indianola High School (grades 8-12) serving white students, and Carver Elementary (grades 1-8) and Gentry High School (grades 9-12) serving black students who resided both in the town of Indianola and the greater area of Sunflower County. Subsequent to the Court's 1970 Orders, the District assigned students by attendance zone, and this practice continues today. In 1971, the Indianola School District enrolled 3,502 students, of whom 91% were black and 9% were white. See 12/12/1972 Report by Defendant at 2. By 1982, the student population decreased to 2,890, of whom 93% were black and 7% were white. See id. Today, the District consists of six schools, three elementary schools, one middle school, one junior high school and one high school, whose total student

population is 2,528 students, of whom 2,393 (95%) are black, 99 (4%) are white, and 31 (1%) are Hispanic. For the 2007-08 school year, student enrollment is as follows:

**2007-2008 School Year**

| School | Grades | No. Black | No. White | Other | Total |
|---|---|---|---|---|---|
| Carver Lower Elementary | K-2 | 406 (100%) | 1 (0%) | 0 (0%) | 407 |
| Carver Upper Elementary | 3-5 | 355 (100%) | 1 (0%) | 0 (0%) | 356 |
| Lockard Elementary | K-8 | 372 (75%) | 89 (18%) | 34 (69%) | 495 |
| Merrit Middle | 6-8 | 332 (100%) | 1 (0%) | 0 (0%) | 333 |
| Cassie Pennington Jr. High | 9 | 265 (99%) | 2 (1%) | 1 (0%) | 268 |
| Gentry High | 10-12 | 663 (99%) | 5 (1%) | 1 (0%) | 669 |
| Total | | 2,393 (95%) | 99 (4%) | 36 (1%) | 2,528 |

Source: 12/20/2007 Report of the District.

There is no evidence that vestiges of segregation remain in any other facet of the District's student assignment.

**Faculty/Staff Assignment:** In the 1971-1972 school year, the District assigned its teachers in a manner that furthered the desegregation process. The District employed 158 teachers, of whom, 120 (76%) were black, 38 (24%) are white. See 12/12/1972 Report by Defendant at 7. The June 11, 1970 Order included several provisions related to the desegregation of faculty and other staff that were implemented. The practice of maintaining a desegregated faculty continues today. For the 2007-08 school year, the District's personnel assignment is as follows:

4

**2007-2008 School Year**

| School | Grades | No. Black | No. White | Other | Total |
|---|---|---|---|---|---|
| Carver Lower Elementary | K-2 | 19 (76%) | 6 (24%) | 0 (0%) | 25 |
| Carver Upper Elementary | 3-5 | 23 (82%) | 5 (18%) | 0 (0%) | 28 |
| Lockard Elementary | K-8 | 12 (40%) | 18 (60%) | 0 (0%) | 30 |
| Merrit Middle | 6-8 | 23 (85%) | 4 (15%) | 0 (0%) | 27 |
| Cassie Pennington Jr. High | 9 | 15 (94%) | 1 (6%) | 0 (0%) | 16 |
| Gentry High | 10-12 | 31 (70%) | 10 (23%) | 3 (7%) | 44 |
| Total | | 123 (72%) | 44 (26%) | 3 (1%) | 170 |

Source: 12/20/2007 Report of the District.

**Transportation:** The January 16, 1970 Order required the District to regularly examine the transportation system to ensure that the development of bus routes and assignment of students to buses is performed on a nonsegregated and nondiscriminatory basis. To date, the District has operated a unitary student transportation system.

**Extra-Curricular Activities:** The District provides all students an equal opportunity to participate in sports, student government, extra-curricular and co-curricular activities.

**Facilities:** The District appears to assign all students based on residences, and to operate all its facilities in a nondiscriminatory manner.

## IV. LEGAL ANALYSIS

The District has fully and satisfactorily complied with the Court's desegregation orders for a reasonable period of time, and has eliminated the vestiges of past <u>de jure</u> discrimination to the extent practicable. <u>Freeman</u>, 503 U. S. at 491-92, 498. The District has demonstrated that it has eliminated the vestiges of the prior dual school system to the extent practicable in the areas of student assignment, faculty, staff, transportation, extracurricular activities which are "among the most important indicia of a segregated system." <u>Dowell</u>, 498 U.S. at 250 (citations omitted). The longstanding compliance by the District, as documented in its annual reports to the Court, demonstrates a good faith commitment to the whole of the Court's order and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance. <u>Jenkins</u>, 515 U.S. at 87-89. The Court concludes that the Indianola School District has met the legal obligations for a declaration of unitary status and is entitled to dismissal of this action.

Accordingly, it is hereby ORDERED that all prior injunctions in this case are DISSOLVED, jurisdiction is TERMINATED, and this case is DISMISSED WITH PREJUDICE.

ENTERED THIS 5TH DAY OF FEBRUARY, 2008.

/s/ W. Allen Pepper, Jr.  
W. ALLEN PEPPER, JR.  
UNITED STATES DISTRICT JUDGE

APPROVED:

FOR THE UNITED STATES:

GRACE CHUNG BECKER
Acting Assistant Attorney General


/s/ Lisa M. Taylor
AMY I. BERMAN
LISA M. TAYLOR
Attorneys
United States Department of Justice
Civil Rights Division
Educational Opportunities Section
Patrick Henry Building
950 Pennsylvania Avenue
601 D Street, NW, PHB 4300
Washington, DC 20530
(202) 514-4092


FOR THE INDIANOLA SCHOOL DISTRICT:


/s/ Richard G. Noble
RICHARD G. NOBLE
Attorney
Crosthwait, Terney & Noble, PLLC
100 Court Avenue
P.O. Box 29
Indianola, MS 38751-0029
(662) 887-3412